UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALVETT FOBBS, et al.,

        Plaintiffs,                  No. C 09-2723 PJH

       v.                        **ORDER GRANTING MOTION**
                                         **TO DISMISS**

CITY OF UNION CITY,

        Defendant.

_____/

Defendant's motion to dismiss plaintiffs' third amended complaint came on for hearing before this court on November 17, 2010.  Plaintiffs, certain minor children represented by guardian ad litems as well as individual plaintiffs proceeding in their own behalf (collectively "plaintiffs"), appeared through their counsel, Pamela Price and Jeshawna Harrell.  Defendant City of Union City ("defendant" or "Union City") appeared through its counsel, Tricia Hynes and Rachel Wagner.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion to dismiss**,** for the reasons stated at the hearing, and as follows.

**BACKGROUND**

The court is well familiar with this section 1983 action, the plaintiffs attempting to proceed on what is now their third amended complaint.  Plaintiffs are several African-American minors (through their guardians ad litem) and residents of Union City, County of Alameda during the relevant time period.  See Third Amended Complaint ("TAC"), ¶¶ 2-23.[1]

---

[1]     The individual plaintiffs and the named guardians ad litem are: plaintiff Steve S., a minor child of guardian ad litem Alvett Fobbs; plaintiff Jess L., a minor child of guardian ad litem Teola Coleman; plaintiff Assata G., a minor child of guardian ad litem Auzalea Godfrey;

United States District Court

For the Northern District of California

1   Plaintiffs were students during the relevant time period within the New Haven Unified

2   School District ("NHUSD").

3   A.      General Allegations

4           Plaintiffs generally allege that defendant Union City – through its police department –

5   has discriminated against plaintiffs and other similarly-situated African-American students

6   on the basis of race, in violation of their rights under the federal and state constitutions.

7   TAC, ¶ 34.  More specifically, plaintiffs allege a series of incidents that took place in, at or

8   around James Logan High School, Bernard White Middle School, Alvarado Middle School,

9   and Cesar Chavez Middle School in Union City.  Id., ¶ 33.

10          The critical incident that took place occurred on December 21, 2007.  On that date,

11   Vernon Eddins was shot and killed "while lawfully on the premises of Bernard White Middle

12   School."  TAC, ¶ 35.  Several plaintiffs were allegedly close personal friends of Eddins,

13   were present at the shooting, and "barely escaped death and/or serious injury."  Id.  Prior to

14   this incident, plaintiffs allege that defendants were aware of on-going, racially motivated

15   violence and threats of violence – including shootings – directed against numerous plaintiffs

16   and other similarly situated African-American students, and had specifically been informed

17   that acts of violence against African-American students would take place on or near school

18   grounds on December 21, 2007.  TAC, ¶ 36.  Plaintiffs allege that defendant had a duty to

19   protect plaintiffs from such acts of violence.  Id.

20          Plaintiffs allege that, subsequent to the Eddins murder, they and other students

21   continued to be subjected to racial violence and intimidation at and around school before,

22   during, and after school hours.  On April 9, 2009, minor plaintiff Khalif L. was physically

23   attacked inside Logan High School in front of the principal's office, because of his race.

24   TAC, ¶ 37.  On July 29, 2009, plaintiff Steve S. was chased by Latino gang members with a

25

26   plaintiff Elisa G., a minor child of guardian ad litem Auzalea Godfrey; plaintiff Jonathan J., a
     minor brother of plaintiff Tereese Sanders; plaintiff Khalif L., a minor child of guardian ad litem

27   Toynica Ledbetter-Franklin; plaintiff Tonsa W., a minor child of guardian ad litem Tiwana
     Smith; plaintiff Tracy W., a minor child of guardian ad litem Tiwana Smith; and named plaintiffs

28   David G., Robbie J., D'Angelo Cole, and Danny Godfrey (collectively "plaintiffs").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   gun as he was waiting at a bus stop.  At the time, Steve S. was wearing a hat with the

2   phrase "Team Vernon" on it – a hat made in memory of Vernon Eddins.  TAC, ¶ 38.

3        Plaintiffs allege that defendant allowed citizens to attack, assault, threaten, and in

4   Eddins' case, murder African-American students attending schools within Union City on the

5   basis of their race.  TAC, ¶ 39.  Instead of protecting African-American students, plaintiffs

6   allege that defendant UCPD routinely accused the African-American students of instigating

7   or causing the attack.  Id.  Defendants allegedly never took any action in response to

8   plaintiffs' complaints, or the complaints of other African-American parents.

9        As a result, from October 2007 through 2009, five minor plaintiffs were enrolled in

10  schools outside their residential areas, in order to remove them from any contact with any

11  persons who might threaten or assault plaintiffs on the basis of their race.  See TAC, ¶¶ 41-

12  45.

13       Plaintiffs allege that, due to defendant's conduct, plaintiffs and other similarly

14  situated African-American students were denied the benefits of NHUSD's educational

15  services, including equal educational opportunities.  TAC, ¶ 46.  Plaintiffs also allege that

16  they live in fear and danger of racially-motivated attacks every day, and that they have

17  suffered damages in excess of $5 million.

18       Plaintiffs bring this action on behalf of themselves, and also on behalf of a class of

19  all similarly situated African-American students.  Specifically, the class is comprised of:

20  "African-American youths between the ages of 13 and 24" who resided in, attended schools

21  in, or entered Union City, or who previously resided in Union City, or who will be attending

22  schools in Union City in the future, and who have or will be subjected to "violence or threats

23  of violence by Latino gangs."  See TAC, ¶ 26.

24       The TAC alleges a single cause of action against defendant: violation of 42 U.S.C. §

25  1983.  See generally TAC.

26  B.  Procedural History

27       On June 19, 2009, plaintiff Sterling S. filed the original complaint in this action

28

1   against defendants NHUSD, and the City of Union City ("Union City").  On October 7, 2009,

2   plaintiff Sterling S., joined by Jalen L., filed a first amended complaint against NHUSD and

3   Union City.  After the court heard and resolved a motion to dismiss by Union City, a motion

4   for judgment on the pleadings by NHUSD, and a motion for leave to file a second amended

5   complaint by plaintiffs, plaintiffs filed their second amended complaint on January 27, 2010.

6          After plaintiffs filed a motion for class certification in July 2010 based on the second

7   amended complaint, they raised with defendant their intention to file a motion for leave to

8   file a third amended complaint.  After a telephonic hearing with the parties, the court

9   vacated the hearing on class certification and instructed the parties to brief plaintiffs'

10  desired motion for leave to file a third amended complaint.  The parties did so, and the

11  court granted plaintiffs' request for leave to file a third amended complaint on August 25,

12  2010.

13         Plaintiffs filed the operative third amended complaint on September 1, 2010.

14  Defendant Union City – the only named defendant in the action – now moves to dismiss

15  once again, pursuant to Federal Rule of Civil Procedure 12(b)(6).

16                                    **DISCUSSION**

17  A.     Legal Standard

18         A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

19  alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

20  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

21  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

22  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

23  requirements of Federal Rule of Civil Procedure 8.

24         Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

25  the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific

26  facts are unnecessary – the statement need only give the defendant "fair notice of the claim

27  and the grounds upon which it rests.  Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell

28

4

United States District Court
For the Northern District of California

1  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are

2  taken as true.  Id. at 94.  However, a plaintiff's obligation to provide the grounds of his

3  entitlement to relief "requires more than labels and conclusions, and a formulaic recitation

4  of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations and

5  quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a

6  right to relief above the speculative level.  Id.

7      A motion to dismiss should be granted if the complaint does not proffer enough facts

8  to state a claim for relief that is plausible on its face.  See id. at 558-59. "[W]here the well-

9  pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

10  the complaint has alleged-but it has not show[n] that  the pleader is entitled to relief.

11  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

12      In addition, when resolving a motion to dismiss for failure to state a claim, the court

13  may not generally consider materials outside the pleadings.  Lee v. City of Los Angeles,

14  250 F.3d 668, 688 (9th Cir. 2001).  There are several exceptions to this rule.  The court

15  may consider a matter that is properly the subject of judicial notice, such as matters of

16  public record.  Id. at 689; see also  Mack v. South Bay Beer Distributors, Inc., 798 F.2d

17  1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the

18  complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion

19  to one for summary judgment).  Additionally, the court may consider exhibits attached to

20  the complaint, see Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542,

21  1555 n.19 (9th Cir. 1989), and documents referenced by the complaint and accepted by all

22  parties as authentic.  See Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th

23  Cir. 2002).

24  B.    The Motion to Dismiss

25      Defendant targets plaintiffs' complaint in its entirety, and seeks dismissal of the

26  action with prejudice.  Defendant makes two overarching arguments:  (1) that plaintiffs'

27  section 1983 claim fails as a matter of law; and (2) that the allegations of the TAC are

28

United States District Court
For the Northern District of California

insufficient to confer standing to seek injunctive relief.

1.      Section 1983 Claim

Plaintiffs allege that defendant violated their constitutionally protected rights in violation of 42 U.S.C. § 1983.  To be liable for a constitutional violation under § 1983, defendant's actions must have caused a deprivation of a federally protected right.  See Estate of Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do, and thereby causes the deprivation of which the plaintiff complains.  Leer, 844 F.2d at 633.  Moreover, in actions against municipalities, such as this one, plaintiffs must additionally allege that plaintiffs were deprived of their constitutional rights by the municipality acting under color of state law; (2) that the municipality has customs or policies which amount to "deliberate indifference" to plaintiffs' constitutional rights; and (3) that these policies were the "moving force behind the constitutional violations."  See, e.g, Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690 (1987)(holding that liability against municipality under § 1983 can only attach when a local government's policy or custom is responsible for inflicting injury at the hands of one of its employees); Amos v. City of Page, Arizona 257 F.3d 1086, 1094 (9th Cir. 2001); see also Oviatt ex rel. Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992).

Plaintiffs here premise their section 1983 claim on two alleged constitutional violations: a violation of plaintiffs' Fourteenth Amendment due process rights, and a violation of plaintiff's Fourteenth Amendment equal protection rights.  In support of these purported violations, plaintiffs in part allege the following:

- that defendant undertook a duty to protect students in the NHUSD and at Barnard White on December 21, 2007, but failed to take reasonable, necessary and proper measures to carry out this duty;

- that defendant maintained discriminatory policies and customs that exhibited deliberate indifference to the safety and constitutional rights of plaintiffs,

6

United States District Court

For the Northern District of California

1  including: inadequately investigating on-going and repeated complaints of
2  racially motivated violence; failing to adequately discourage racially motivated
   violence; creating the perception that such misconduct would be tolerated;
3  and suggesting that African Americans move to another city in response to
   racially motivated violence;

4  • that defendant failed to properly train its officers how to report, monitor and
5  respond to gang violence or racially motivated attacks and assaults;

6  • that defendant's policy of discrimination condones and accepts racial violence
   directed at African-American residents of Union City; and

7  • that defendant's conduct substantially interfered with plaintiffs' lives and
8  education on the basis of their race, in violation of the due process and equal
   protection clauses of the Fourteenth Amendment.

9  See TAC, ¶¶ 53-58.

10  Defendant seeks dismissal of plaintiffs' claim on three grounds: (1) plaintiffs'

11  allegations that defendant failed to protect them from private violence fail to plead a viable

12  section 1983 claim premised on a due process violation, as a matter of law; (2) that

13  plaintiffs have failed to plead the necessary elements to state a section 1983 claim

14  premised on an equal protection violation; and (3) even if a constitutional violation were

15  properly were stated, plaintiffs' section 1983 claim fails for lack of causation.

16  a.  due process

17  To the extent that plaintiffs attempt to premise their section 1983 claim on

18  defendant's failure to "protect" African-American students from the threat of racially

19  motivated violence, defendant is correct that plaintiffs may not ground their claim on the

20  due process clause of the Fourteenth Amendment.  It is well-established that an alleged

21  police failure to protect an individual against violence perpetrated by a third party cannot

22  violate the Fourteenth Amendment.  See DeShaney v. Winnebago County Dept. of Social

23  Servs., 489 U.S. 189, 195 (1989); Johnson v. City of Seattle, 474 F.3d 634 (9th Cir. 2007).

24  In other words, police inaction cannot be used to invoke a violation of the due process

25  clause of the Fourteenth Amendment.  Plaintiffs' counsel, furthermore, conceded as much

26  at the hearing on this matter.

27  Accordingly, defendant's motion to dismiss plaintiffs' section 1983 claim on this

28

7

United States District Court

For the Northern District of California

1    particular ground, is GRANTED.  Such dismissal is with prejudice.

2                    b.       equal protection

3          To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

4    Clause of the Fourteenth Amendment, a plaintiff "must show that the defendants acted with

5    an intent or purpose to discriminate against the plaintiff based upon membership in a

6    protected class," and that plaintiff was treated differently from persons similarly situated.

7    Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998); Lee v. City of Los Angeles, 250

8    F.3d 668 (9th Cir. 2001); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976).  As

9    defendant notes, a plaintiff may satisfy this showing by alleging four separate elements: (1)

10   that the municipal defendant treated plaintiff differently from others similarly situated; (2)

11   this unequal treatment was based on an impermissible classification; (3) the municipal

12   defendant acted with discriminatory intent in applying this classification; and (4) plaintiffs

13   suffered injury as a result of the discriminatory classification.  See, e.g., T.A. ex rel. Amador

14   v. McSwain Union Elementary Sch. Dist., 2009 WL 1748793 (E.D. Cal. 2009).

15         The court agrees with defendant that plaintiffs have failed to plead these necessary

16   elements.  Specifically, the complaint fails to allege that plaintiffs were treated differently

17   from any other class of individuals that were similarly situated, or to explain how defendant

18   acted with discriminatory intent – fundamental prerequisites to any equal protection claim.

19         At the hearing on the motion, plaintiffs' counsel argued that paragraphs 36, 38, and

20   39 of the third amended complaint sufficiently allege defendant's disparate treatment of

21   African-American students, when compared to Latino gang members, and further that

22   these paragraphs support the inference that African-American students were treated

23   differently from any other race.  The court, however, fails to find the support plaintiffs proffer

24   within the context of these paragraphs.  Paragraph 36 generally alleges that defendant was

25   aware of ongoing racially motivated violence directed against plaintiffs and other similarly

26   situated African-American youths; paragraph 38 alleges that plaintiff Steve S. was "chased

27   by Latino gang members with a gun," as part of a course of conduct undertaken by Latino

28

                                                8

United States District Court

For the Northern District of California

1  gangs; and paragraph 39 alleges that defendant allowed "citizens" to attack and intimidate

2  African-American students and failed to properly intervene on the students' behalf.  In

3  short, none of these paragraphs alleges that defendant treated African-American students,

4  as a group, in a manner that is distinct from a separately identifiable group of individuals

5  that was similarly situated, nor do the paragraphs – or the complaint, for that matter – set

6  forth a basis for comparison between plaintiffs or African-American students as a group,

7  and any other identifiable similarly situated group.

8      At most, plaintiffs have pled that defendant maintained discriminatory policies and

9  customs that exhibited "deliberate indifference" to the safety and constitutional rights of

10  African-American youths, including plaintiffs. TAC, ¶ 54.  However, in order to plead

11  intentional discrimination under the equal protection clause, allegations of deliberate

12  indifference – such as plaintiffs make here, see TAC ¶¶ 54-55 – are not sufficient.  Rather,

13  plaintiff must allege that defendant acted affirmatively with the intent to discriminate against

14  plaintiffs *because of their race.* See Lee, 250 F.3d at 687 ("plaintiffs fail[] to allege that

15  defendants' acts or omissions were motivated by discriminatory animus toward the mentally

16  disabled as a protected class.  The mere fact that defendants' facially neutral policies had a

17  foreseeably disproportionate impact on an identifiable group does not mean that they

18  violated the Equal Protection Clause").  Plaintiffs' allegations fail to do so here.

19      The court furthermore notes that, to the extent plaintiffs attempt to root their equal

20  protection violation in a municipal custom or policy, it is difficult to discern from the

21  complaint, as stated, what the actual nature of those customs and/or policies are.  Plaintiffs

22  generally allege that defendant's policies and customs consist of inadequately investigating

23  on-going and repeated complaints of racially motivated violence, failing to adequately

24  discourage and sanction racially motivated violence against African-Americans, and

25  suggesting that African-American youths should move to another city in response to such

26  violence. TAC, ¶ 54.  It is unclear, however, whether plaintiffs are alleging that the policies

27  and customs themselves were expressly targeted towards African-Americans on their face,

28

9

United States District Court

For the Northern District of California

1    or were instead neutral policies that had a disparate impact on African-Americans.

2         In sum, the court finds plaintiffs' complaint lacking in essential elements and on that

3    basis GRANTS defendant's motion to dismiss plaintiffs' section 1983 claim for failure to

4    adequately allege a constitutional violation premised on equal protection grounds.  The

5    court finds, however, that leave to amend is warranted, so that plaintiffs may attempt to

6    clarify their complaint and to cure the deficiencies noted above.

7              c.    causation

8         Defendant also contends that plaintiffs have failed to allege a concrete city policy or

9    custom that can be causally linked to plaintiffs' injuries, which defendant characterizes as

10   subjecting plaintiffs to "sporadic criminal attacks."  As such, defendant argues that plaintiffs

11   cannot demonstrate that any policy is the "moving force" behind the injuries, as required for

12   a valid Monell claim to be stated.

13        Once again, defendant has a valid point.  As already noted, plaintiffs' identification of

14   discriminatory city policies and/or customs lack some degree of clarity with respect to

15   allegations of disparate treatment.  However, to the extent that plaintiffs have nonetheless

16   adequately alleged practices with which plaintiffs take issue, see, e.g., TAC, ¶ 54, these

17   practices, policies and/or customs all constitute *after the fact* investigatory practices.  Yet

18   plaintiffs do not allege how such after the fact investigatory practices could be causally

19   linked to plaintiffs' injuries.  To the extent plaintiffs' section 1983 claim is based on

20   defendant's failure to protect the plaintiff class from violence in a non-discriminatory

21   fashion, such duty to protect would necessarily occur prior to the fact of harm, not after.

22   Thus, as plaintiffs' allegations currently stand, the complaint fails to allege the requisite link

23   between defendant's customs, policies, or practices, and plaintiffs' injuries.

24        Furthermore, as defendant duly points out, there are only three direct injuries alleged

25   that are related to the purported gang violence at issue:  the December 21, 2007 shooting

26   of Eddins; the April 9, 2009 physical attack on plaintiff Khalif L. inside Logan High School;

27   and the July 29, 2009 chasing of plaintiff Steve S. at a bus stop by Latino gang members

28

United States District Court

For the Northern District of California

1   with a gun.  TAC, ¶¶ 37-38.  Plaintiffs allege no link between these particular events and

2   injuries, and defendant's actual policies, customs, and practices – no way in which the

3   customs, policies, or practices themselves could have been the "moving force" behind

4   these acts of violence by third parties.  At the hearing, plaintiffs' counsel argued that

5   defendant's policies, customs, and practices are linked to injuries sustained by all of the

6   named plaintiffs and the plaintiff class, in addition to the three incidents specifically detailed

7   in the complaint.  However, while counsel may have argued as much, the fact remains that

8   the complaint fails to allege as much.

9       Accordingly, the court also GRANTS defendant's motion to dismiss plaintiffs' section

10  1983 claim, on grounds that plaintiffs have failed to properly allege a causal link between a

11  specific municipal policy, custom, or practice, and plaintiffs' alleged injuries – as required

12  for Monell liability.  Leave to amend shall be granted, however.

13      2.   Injunctive Relief

14      Generally, to establish standing, a plaintiff must show: (1) that there is an actual or

15  imminent injury, which is concrete and particularized, not hypothetical or conjectural; (2)

16  that the injury is fairly traceable to the defendant's actions; and (3) that it is likely, not

17  merely speculative, that the injury will be redressed by a favorable decision.  See, e.g.,

18  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Nat'l Audubon Soc'y, Inc. v.

19  Davis, 307 F.3d 835, 848 (9th Cir. 2002).  In addition, where a plaintiff is seeking an

20  equitable remedy like injunctive relief, there must be a "showing of [] real or immediate

21  threat that the plaintiff will be wronged again - a 'likelihood of substantial and immediate

22  irreparable injury.'"  Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1042 (9th Cir. 1999).

23      Here, this showing of a real and immediate threat is lacking.  As defendant notes,

24  the most recent alleged incident here occurred on July 9, 2009 – well over one year ago.  In

25  addition, seven of the twelve plaintiffs are not current residents of Union City, and for two of

26  the named plaintiffs, there are no allegations of injury due to gang violence.  All of which

27  fails to suggest that there is any substantial and immediate irreparable injury that will occur

28

United States District Court

For the Northern District of California

1    in the absence of injunctive relief.  Plaintiffs' response, moreover – that defendant's

2    policies, customs, and practices are a "continual violation" of plaintiffs' constitutional rights

3    – is inadequate.  A continuing violation, unsupported by allegations of real or immediate

4    threat, may be remedied via damages.

5        Thus, defendant's motion to dismiss the injunctive relief request, for lack of alleged

6    standing, is also GRANTED.  Leave to amend is granted, so that plaintiffs may attempt to

7    allege additional facts that would support a finding that there is a 'likelihood of substantial

8    and immediate irreparable injury' in the event injunctive relief is not granted.

9    C.    Conclusion

10       For the foregoing reasons, the court hereby GRANTS defendant's motion to dismiss.

11   Leave to amend, however, is granted as specifically outlined above.  Any amendments are

12   also limited to those grounds outlined above.  Plaintiffs' fourth amended complaint shall be

13   filed no later than February 27, 2011.

14

15   **IT IS SO ORDERED.**

16   Dated: January 31, 2011

17                                                   PHYLLIS J. HAMILTON
                                                     United States District Judge

18

19

20

21

22

23

24

25

26

27

28