1

2

3                    UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5

6

7   KHALIF L., et al.,

8           Plaintiffs,                          No. C 09-2723 PJH

9   v.                                           **ORDER DENYING MOTION
                                                 FOR CLASS CERTIFICATION**
10  CITY OF UNION CITY,

11          Defendant.
    _____/
12

13          Plaintiffs' motion for class certification came on for hearing before this court on

14  December 21, 2011.  Plaintiffs, who consist of named representatives and individuals

15  comprising a putative class of African-American minors with a qualifying connection to

16  Union City, California during the relevant time period ("plaintiffs"), appeared through their

17  counsel, Pamela Price.  Defendant City of Union City ("Union City") appeared through its

18  counsel, Rachel Wagner and Tricia Hynes.  Having read the parties' papers and carefully

19  considered their arguments and the relevant legal authority, and good cause appearing, the

20  court hereby DENIES plaintiffs' motion for class certification, for the reasons stated at the

21  hearing, and as follows.

22                              **BACKGROUND**

23          Plaintiffs' fifth amended complaint, which follows several prior iterations, arises out of

24  allegations that the Union City Police Department ("UCPD") unlawfully discriminates

25  against African-American youth by routinely denying police services to African-Americans

26  who have been victimized by Latino gang violence.[1]  Plaintiffs now seek class certification

27  _____

28          [1]     Plaintiffs' original complaint generally alleged the UCPD's failure to protect Union
    City's African-American youth from violence perpetrated by Latino gang members, but
    plaintiffs' claims were amended and narrowed to reflect a claim for failure to provide police

United States District Court

For the Northern District of California

1   in connection with their operative complaint.  <u>See generally</u> Fifth Amended Complaint.

2   A.      General Allegations of Fifth Amended Complaint

3           Plaintiffs allege that they have "been subjected to multiple acts of racial harassment

4   and racially motivated violence by Latino gangs in and around Union City," that defendant

5   Union City, operating through the UCPD, has "denied [them] police services because of

6   [their] race," and that as a result, defendant has intentionally discriminated against plaintiffs

7   and other similarly-situated African-American youth on the basis of race, in violation of their

8   Fourteenth Amendment equal protection rights.  <u>See generally</u> Fifth Amended Complaint

9   ("FAC").

10          Plaintiffs more specifically allege a series of incidents that took place in, at or around

11  James Logan High School, Barnard White Middle School, Alvarado Middle School, and

12  Cesar Chavez Middle School in Union City, which form a part of the New Haven Unified

13  School District ("NHUSD").  <u>See</u> FAC, ¶ 35.  The critical incident occurred on December 21,

14  2007.  On that date, Vernon Eddins was shot and killed "while on the premises of Barnard

15  White Middle School."  FAC ¶ 39.  Several plaintiffs, who were close personal friends of

16  Eddins, were present at the shooting, and "barely escaped death and/or serious injury."  <u>Id</u>.

17          Plaintiffs allege that prior to this incident, they were subjected to on-going, racially

18  motivated violence and threats of violence, as part of a course of conduct by Latino gangs

19  intended to terrorize African-American youths traveling around Union City.  FAC ¶ 39.

20  Plaintiffs further allege that before and after Eddins' murder, they and other students

21  continued to be subjected to racial violence and intimidation at and around school before,

22  during, and after school hours.  FAC ¶¶ 41-66.  The FAC alleges numerous incidents of

23  _____

24  services on an equal basis, in light of <u>DeShaney v. Winnebago County Dept. of Soc. Servs.</u>,

25  489 U.S. 189, 197 (1989)("As a general matter, then, we conclude that a State's failure to
    protect an individual against private violence simply does not constitute a violation of the Due

26  Process Clause").

27

28

racially-motivated violence, on a plaintiff by plaintiff basis.  <u>See id</u>.  These instances

include:

- <u>Plaintiff Danny Godfrey</u> ("Godfrey"): in spring 2005, Godfrey was confronted and threatened by Latino gang members, and in spring 2006, was accosted at Union Landing by adult Latino males and threatened with violence;

- <u>Plaintiff David G.</u> ("David G."): beginning in spring 2006, David G. was repeatedly accosted at Union Landing and threatened by Latino males; in July 2007, David G. was involved in a fight between several Latinos and an African-American after a Decoto gang member tried to spit on him; in spring 2008, David G. was confronted by a group of Latino males near the Union City BART station; and during his senior year, was waiting for a bus when several Latino males drove by and flashed a gun at him;

- <u>Plaintiff Jess L.</u> ("Jess L."): between 2006 and 2010, Jess. L. was subjected to multiple incidents of violence, threats and intimidation by the Decoto gang; was confronted by an older Latino male with a bat once; was pushed and confronted by a Latino male at Union Landing in 2009; was present in early 2007 when Vernon Eddins was punched in the face by an older Latino man after school in the Starbucks parking lot; and was present when Eddins was killed in 2007;

- <u>Plaintiff Steve S.</u> ("Steve S."): in October 2007, Steve S. was chased home and subjected to racial slurs by Decoto gang members; in July 2009, he was chased by Latino gang members with a gun while waiting at a bus stop; and he was present when Eddins was killed in 2007;

- <u>Plaintiff Robbie J.</u> ("Robbie J."): Robbie J. was present in 2007 when Vernon Eddins was punched in the face by an older Latino man after school in the Starbucks parking lot; was shot at by the car of a Latino gang member while walking home from school in December 2007; and was present when Eddins was killed in 2007;

- <u>Plaintiffs Tonsa W. and Tracy W.</u> ("Tonsa W." and "Tracy W."): both plaintiffs, who are sisters, experienced racial epithets, intimidation, and threats from Decoto gang members at "an alarming frequency" between 2002 and 2007;

- <u>Plaintiff D'Angelo Cole</u> ("Cole"): Cole witnessed a shooting directed at his friend by a Latino male while standing at a bus stop in November 2007;

- <u>Plaintiff Khalif L.</u> ("Khalif L."): Khalif L. was attacked and hit in the head with a baseball bat inside Logan by a Latino gang member.

United States District Court

For the Northern District of California

1   Id.[2]  In addition to these allegations, plaintiffs also provide other anecdotal

2   allegations of violence perpetrated against other community members and parents of

3   young African-Americans.  See generally FAC.  According to plaintiffs, the racial

4   harassment by the Decoto gang was successful in achieving its purpose of forcing black

5   families and their children to leave Union City.  FAC, ¶ 67.

6   Plaintiffs further allege that the UCPD regularly provides non-discriminatory police

7   services to residents of other ethnicities, including Latino, Asian and Caucasian residents,

8   and that the services it provides to them include dispatching officers and responding

9   promptly to reports of violence and reports of harassment involving violence.  FAC, ¶ 68.

10  The UCPD has, however, purportedly enforced the law against African-Americans in favor

11  of the Decotos or other Latino citizens, and refused to provide police services to African-

12  Americans, thus allowing the non African-American perpetrators to escape the

13  consequences of their actions.  See id., ¶ 70.

14  By doing so, plaintiffs allege that the UCPD has denied all similarly situated African-

15  American youths the benefits of police services and the NHUSD's educational services, on

16  the basis of their race.  Plaintiffs also allege that, from October 2007 through 2009, five

17  minor plaintiffs were enrolled in schools outside their residential areas, in order to remove

18  them from any contact with any persons who might threaten or assault plaintiffs on the

19  basis of their race.  See FAC ¶¶ 70-73.

20  B.   Procedural History

21  On June 19, 2009, plaintiff Sterling S. filed the original complaint in this action

22  against defendants NHUSD and the City of Union City ("Union City").  On October 7, 2009,

23  plaintiff, joined by Jalen L., filed a first amended complaint against NHUSD and Union City.

24  After the court heard and resolved a motion to dismiss by Union City, a motion for judgment

25  on the pleadings by NHUSD, and a motion for leave to file a second amended complaint by

26  _____

27      [2]      Plaintiffs do not directly allege specific acts of violence directed at named

28  plaintiffs Assata G, Elisa G., and Jonathan J.

4

United States District Court

For the Northern District of California

1   plaintiffs, plaintiffs filed their second amended complaint on January 27, 2010.

2       After plaintiffs filed a motion for class certification in July 2010 based on the second

3   amended complaint, they raised with defendant their intention to file a motion for leave to

4   file a third amended complaint.  After a telephonic hearing with the parties, the court

5   vacated the hearing on class certification and instructed the parties to brief plaintiffs'

6   desired motion for leave to file a third amended complaint.  The parties did so, and the

7   court granted plaintiffs' request for leave to file a third amended complaint on August 25,

8   2010.

9       Plaintiffs filed their third amended complaint ("TAC") on September 1, 2010.  By

10  order dated January 31, 2011, the court granted defendant Union City's motion to dismiss

11  the TAC with leave to amend.  Plaintiffs filed a fourth amended complaint on February 28,

12  2011, and filed a revised fourth amended complaint pursuant to stipulation on March 22,

13  2011.

14      Defendant then once again moved to dismiss the revised fourth amended complaint,

15  and on July 29, 2011, the court granted the motion with yet another opportunity for plaintiffs

16  to amend.  Plaintiffs did so with the filing of the present fifth amended complaint on August

17  19, 2011.

18      The FAC now alleges a single cause of action against defendant: <u>Monell</u> liability for

19  violation of plaintiffs' Fourteenth Amendment equal protection rights pursuant to 42 U.S.C.

20  § 1983.  <u>See generally</u> FAC.  Plaintiffs' single section 1983 claim is comprised of two

21  "counts": (a) one alleging intentional discrimination; and (2) one alleging failure to train.

22      With respect to the intentional discrimination count, plaintiffs allege that as a matter

23  of custom and practice, defendant UCPD routinely accused African-American students and

24  their parents of instigating or causing the attacks of violence, arrested or threatened the

25  African-American victims with arrest, and focused their investigations on the African-

26  American victims rather than the Latino perpetrators of the racially-motivated violence.

27  FAC, ¶ 81.  Defendant allegedly denied plaintiffs police services by means of a litany of

28

United States District Court

For the Northern District of California

1   various acts and omissions, including: refusing to respond to complaints of racially related

2   violence; refusing to investigate and under-reporting the same; refusing to enforce penal

3   laws against Decoto gang members; and refusing to track incidents of racially-motivated

4   gang violence. Id., ¶ 82. All these practices, allege plaintiffs, demonstrated an intent to

5   discriminate against plaintiffs.

6           With respect to the failure to train count, plaintiffs allege that defendant UCPD failed

7   to properly train its officers how to report, monitor and/or respond to gang violence and/or

8   racially motivated attacks and assaults, without discriminating against the victims of the

9   crime on the basis of their race. FAC, ¶ 91. In particular, UCPD allegedly made a

10  conscious decision not to train its Student Resource Officers ("SROs") in the detection and

11  investigation of racially-motived gang violence in and around Union City schools. Without

12  this training, defendant's SROs purportedly fail to prepare detailed reports of incidents of

13  violence against African-Americans and fail to properly investigate and document such

14  incidents. FAC, ¶ 93.

15          As a result of the foregoing, plaintiffs pray for $5 million in damages, and injunctive

16  relief. Plaintiffs seek this relief on their own behalf, and on behalf of the following class: "All

17  African-American youths between the ages of 13 and 24 who have been subjected to

18  violence or threats of violence by Latino gangs in Union City during the period from January

19  2004 to the present and who may be subjected to violence or threats of violence by Latino

20  gangs in Union City in the future...". See FAC, ¶ 28. Plaintiffs also seek relief on behalf of

21  the following subclasses:

22          •   African-American youths between the ages of 13 and 24 who
                resided in Union City during the period from January 2004 to the
23              present and were subjected to violence or threats of violence by
                Latino gangs;
24
            •   African-American youths between the ages of 13 and 24 who
25              attended schools in Union City during the period from January 2004
                to the present and were subjected to violence or threats of violence
26              by Latino gangs;

27          •   African-American youths between the ages of 13 and 24 who came
                into Union City during the period from January 2004 to the present
28

6

and were subjected to violence or threats of violence by Latino gangs;

• African-American youths between the ages of 13 and 24 who previously resided in and moved out of Union City during the period from January 2004 to the present because of violence or threats of violence by Latino gangs; and

• African-American youths between the ages of 13 and 24 who will be attending schools in Union City in the future and may be subjected to violence or threats of violence by Latino gangs.

See id.

Plaintiffs' motion for class certification is now before the court.

**DISCUSSION**

A.   Legal Standard

In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  As a threshold to class certification, plaintiffs must satisfy four prerequisites under Rule 23(a).  First, the class must be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the person representing the class must be able to protect fairly and adequately the interests of all members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).

If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which named plaintiffs must establish that either 1) there is a risk of substantial prejudice from separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or 3) common questions of law or fact common to the class predominate

United States District Court

For the Northern District of California

1  and that a class action is superior to other methods available for adjudicating the

2  controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

3        The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

4  determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

5  177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine

6  whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes

7  Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination "will

8  sometimes require examining issues that overlap with the merits."  Wal-Mart, 131 S. Ct. at

9  2551-52 ([T]he class determination generally involves considerations that are enmeshed in

10  the factual and legal issues comprising the plaintiff's cause of action")(citations omitted).

11  The court will consider matters beyond the pleadings, if necessary, in order to ascertain

12  whether the asserted claims or defenses are susceptible of resolution on a class wide

13  basis.  See id. at 589; see also McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir.

14  1984).

15  B.    Legal Analysis

16        Plaintiffs seek certification of a class and the various subclasses listed above in

17  connection with their section 1983 equal protection claim pursuant to Federal Rules of Civil

18  Procedure 23(a), and 23(b)(2) and (b)(3).[3]  The class plaintiffs seek to certify, including the

19  various subclasses, is in essence the following:  a class of African-American youths

20  between the ages of 13 and 24 who have resided in, attended schools in, visited,

21  previously resided in Union City and were subjected to violence or threats of violence by

22  Latino gangs for the time period of 2004 to the present, and those who will attend Union

23  City schools in the future and may be subjected to violence or threats of violence by Latino

24  gangs.  See FAC, ¶ 28.

25

26         [3]    The court notes that plaintiffs' opening brief also argues for certification pursuant

27  to Rule 23(b)(1) and Rule 23(c)(4)(a).  However, to the extent these grounds are cognizable, plaintiffs appear to have abandoned any substantive reliance on them in their reply brief, and

28  at the hearing on the motion.

United States District Court
For the Northern District of California

1    As a preliminary matter, plaintiffs' class definition is so broad and vague as to make

2 the class unascertainable. Plaintiffs have defined the class, for example, as being

3 comprised of individuals who were subjected to violence or threats of violence, by "Latino

4 gangs." However, determination of the gang membership of the perpetrator of a particular

5 act of violence, as a qualifier for determining the class membership of the victim, is

6 inherently subjective. The court can discern no objective criteria, nor have plaintiffs posited

7 one, for determining that a class member has been subjected to violence or a threat of

8 violence by an actual Latino gang member. Indeed, the court notes that many of plaintiffs'

9 allegations do not even allege actions taken specifically by Latino "gang members," and

10 instead claim only that plaintiffs were subjected to acts of violence by "adult Latino males."

11 See, e.g., TAC, ¶¶ 43, 46, 48, 51, 54. In these instances, plaintiffs appear to seek an

12 inference from the court that Latino heritage or ethnicity is an adequate proxy for

13 membership in a Latino gang. Such an inference, however, is both unwarranted and one

14 the court declines to make. As such, and notwithstanding plaintiffs' contrary allegations

15 that certain actions were taken against plaintiffs by "Decoto" gang members, the court is

16 hard pressed to determine how membership in the class could be ascertained, without

17 secondary information indicating whether a Latino perpetrator of a crime against a plaintiff

18 was in fact a Latino – e.g., "Decoto" – gang member. The need for such secondary and

19 inherently non-objective assessment, precludes the existence of an ascertainable class.

20    So does the fact that plaintiffs' class definition is completely untethered to any claims

21 actually asserted in the complaint. As defendant correctly notes, plaintiffs' class definition

22 bears no resemblance to the actual liability issues in this case – i.e., whether the UCPD

23 has a pattern and practice and/or policy of unfairly denying police services to African-

24 American youth. The class definition makes no attempt to carve out a class of plaintiffs

25 who have actually been subjected to police conduct of any kind. The class simply

26 encompasses anyone and everyone who has been subjected to violence or a threat thereof

27 by Latino gang members in Union City – provided they are African-American and between

28

United States District Court

For the Northern District of California

1    the ages of 13 and 24 – regardless whether these same individuals ever reported any

2    crimes to the police, or had contact with the police about violence perpetrated against

3    them.  The court is at pains to understand how plaintiffs can purport to demonstrate that

4    members of the class were denied the same degree of police services afforded to

5    members of other races, when the class definition fails to require that the class members

6    ever sought police services in the first place.  Nor has plaintiffs' counsel elucidated the

7    court's analysis in this respect: when asked for clarification as to this issue at the hearing

8    on plaintiffs' motion, counsel indicated that not all class members are required to have

9    contact with the UCPD in order to be subject to discriminatory policies by the UCPD, and/or

10   alternatively, that the court should simply use its power as "wordsmith" to "re-define" the

11   class.  As to the former, however, plaintiffs' cited legal authorities fail to affirmatively explain

12   how plaintiffs may demonstrate an unconstitutional denial of police services under section

13   1983 without first demonstrating that plaintiffs were, in fact, denied equal provision of police

14   services.  As to the latter, it is not the court's responsibility to delineate and define the

15   appropriate parameters of an ascertainable class on whose behalf the representative

16   plaintiffs might seek relief.

17          In short, plaintiffs have failed to define either an objectively ascertainable class, or

18   one in which membership is properly related to the merits of plaintiffs' claims.  This flaw is

19   fatal, as an implied prerequisite to certification is that the class must be sufficiently definite,

20   and objectively ascertainable.  See Williams v. Oberon Media, Inc., 2012 WL 562726, *1

21   (9th Cir. Feb. 22, 2012)(affirming district court's denial of class certification on grounds that

22   proposed classes were not "precise, objective or presently ascertainable"); see also Narouz

23   v. Charter Communications, LLC, 591 F.3d 1261, 1266 (9th Cir. 2010)(Rule 23 is "designed

24   to protect absentees by blocking unwarranted or overbroad class definitions").

25          While this conclusion alone justifies denial of plaintiffs' motion for class certification,

26   the court nonetheless proceeds to analyze plaintiffs' substantive showing pursuant to Rule

27   23(a) and (b).  As noted, plaintiffs generally contend that certification of a plaintiff class is

28

United States District Court

For the Northern District of California

1  warranted, because all four elements of Rule 23(a), as well as the requirements of Rule

2  23(b), are satisfied.  In response, defendant primarily objects to plaintiffs' ability to satisfy

3  both the numerosity and commonality elements of Rule 23(a); and the substantive

4  requirements of Rule 23(b)(2) and (b)(3).

5      Ultimately, and for the reasons explained more fully below, the court agrees with

6  defendant, and concludes that plaintiffs have failed to discharge their burden to

7  demonstrate that the requisite Rule 23 factors have been satisfied.

8      1.    Rule 23(a)

9      As noted above, plaintiffs must first demonstrate that they have satisfied the

10  requirements for class certification under Rule 23(a), which requires a showing as to the

11  following four elements:  numerosity, commonality, typicality, and adequacy.  In assessing

12  plaintiffs' showing, the court must perform "a rigorous analysis [to ensure] that the

13  prerequisites of Rule 23(a) have been satisfied."  See Wal–Mart, 131 S.Ct. at 2551 (internal

14  citation and quotation marks omitted).  That 'rigorous analysis' will, in many cases, entail

15  some overlap with the merits of a plaintiff's underlying claim.  See id.; see also Ellis v.

16  Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011).

17      Neither numerosity nor commonality have been satisfied here.

18          a.    numerosity

19      Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

20  impracticable.  In order to satisfy this requirement, plaintiffs need not state the "exact"

21  number of potential class members, nor is there a specific number that is required.  See In

22  re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).  Rather, the

23  specific facts of each case must be examined.  In re Beer Distrib. Antitrust Litig., 188

24  F.R.D. at 561 (citing General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980)).  While the

25  ultimate issue in evaluating this factor is whether the class is too large to make joinder

26  practicable, courts generally find that the numerosity factor is satisfied if the class

27  comprises 40 or more members, and will find that it has not been satisfied when the class

28

United States District Court

For the Northern District of California

1    comprises 21 or fewer.  See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d

2    473, 483 (2d Cir. 1995); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

3        Plaintiffs contend that numerosity is satisfied, based primarily on a single piece of

4    evidence:  statistics culled from the U.S. Census Bureau's results of the 2000 census and

5    submitted by defendant in response to plaintiffs' Certification Interrogatory No. 5, which

6    requested the total number of African-Americans between the ages of 12 to 25 residing in

7    Union City for each year from January 1, 2000 to the present.  See Declaration of Pamela

8    Y. Price ("Price Decl."), ¶ 48, Ex. A.[4]  The 2000 census information produced by defendant

9    appears to indicate that there were 4,456 Black or African-American people living in Union

10   City at the time, and that there were 301 Black or African-American students enrolled in

11   grades 9 through 12 in Union City (293 of those attending public schools).  See id. at UC

12   00594.  According to plaintiffs, these statistics, combined with the anecdotal testimony

13   provided in plaintiffs' own declarations and the fact that class members are both

14   geographically dispersed and difficult to identify, support an affirmative determination of

15   numerosity.

16       Defendant, however, asserts that plaintiffs' reliance on the 2000 census data is

17   unduly speculative, and furthermore, that plaintiffs' supporting declarations are insufficient

18   to satisfy numerosity requirements, since the testimony therein exposes a paucity of

19   contact between certain putative class members and the UCPD (and thus, lack of

20   membership in the class).

21       Defendant's objections are well taken.  Plaintiffs have failed to connect the census

22   information they primarily rely upon – and that establishes the presence of 301 Black or

23   African-American students enrolled in grades 9 through 12 in Union City in 2000 – to their

24   own class definition or claims.  Plaintiffs contend, for example, that the presence of 301

25

26        [4]      Although paragraph 48 of the Price Declaration indicates that the 2000 census
     information was submitted in response to Certification Interrogatory No. 5, the court notes that
27   the actual cover page attached to the census information submitted as Exhibit A to the Price
     Declaration, appears to note that the census information was submitted in response to
28   Requests for Production Nos. 1-4.

African-American high school students (only 293 of which attend public schools) is a fair predictor of the existence of hundreds of African-American class members between the ages of 13 and 24.  They ignore, however, that class membership as defined by plaintiffs, is limited to those who were also subjected to violence or threats of violence by Latino gangs.  Putting aside the inherent difficulties that arise in determining membership by virtue of exposure to violence and/or threats by 'Latino gangs,' the census data relied on by plaintiffs says nothing whatsoever about whether any African-American students experienced any violence/or threats at the hands of 'Latino gangs.'  Further, although the actual claims asserted in plaintiffs' complaint centers on the UCPD's failure to provide police services to African-American youths, the census information sheds no light at all on whether, let alone how many, African-American youths came into contact with the UCPD as a result of such violence and/or threats.

Plaintiffs' submitted declarations, moreover, do little to resolve these deficiencies.  Plaintiffs have submitted declarations that include testimony from 12 of the named plaintiffs and 6 putative class members, all of which report varying incidents of sporadic violence and threats against plaintiffs by Latino gang members and other Latinos not designated as gang members, and varying experiences with the UCPD in connection with these incidents – with some class members reporting no contact with the UCPD at all, and some reporting UCPD contact as consistent with the UCPD's *provision* of police protective services (e.g., investigation of reported criminal activity), as with denial thereof.  See, e.g., Declaration of Tracy W. ISO Sec. Mot. Class Cert. ("Tracy W. Decl."); Declaration of Tonsa W. ISO Sec. Mot. Class Cert. ("Tonsa W. Decl."); Declaration of Robbie J. ISO Sec. Mot. Class Cert. ("Robbie J. Decl."), ¶ 6.  Thus, far from shoring up plaintiffs' claim that numerosity is satisfied, plaintiffs' declarations actually suggest the distinct possibility that some of the named class members proceeding before the court do not actually qualify for class membership.

The suggestion that class members may be far fewer than plaintiffs envision is

13

1    further buttressed by the testimony provided by defendant's own economist and/or

2    statistician, Dr. Jeff Dominitz, whose declaration reports the following unrefuted findings for

3    the time period spanning January 27, 2005 through October 26, 2011:  224 African

4    American youths between the ages of 13 and 24 were reported as crime victims in

5    connection with incidents involving assault, battery, or brandishing a weapon; of these 224

6    African-American victims, 34 were victims in incidents where the suspect or suspects were

7    reported to be Latino; 10 African American youths between the ages of 13 and 24 were

8    reported as crime victims in connection with incidents involving homicide or attempted

9    homicide; and of these 10 African-American victims, 3 were victims in incidents where the

10   suspect or suspects were reported to be Latino.  See Declaration of Jeff Dominitz, Ph.D.,

11   ISO Def. Class Cert. Opp. ("Dominitz Decl."), ¶¶ 12-16.  Thus, a total of 37 criminal

12   incidents reported to the UCPD from 2005 through 2011 involved African-American youths

13   between the ages of 13 and 24, victimized by Latino suspects.  Taking into account the fact

14   that no link has been made between Latino suspects and 'Latino gang' suspects, and the

15   court's unwillingness to presume that every Latino suspect was also a gang member, these

16   statistics lend a speculative pall over plaintiffs' assertion that the 2000 census information is

17   indicative of a plaintiff class that numbers in the hundreds.

18        In sum, while there is nothing inherently improper about plaintiffs' reliance on census

19   data, in combination with other facts, to support a numerosity showing, where the census

20   data is unrelated to the class definition, unsupported by supporting evidence, and

21   furthermore flies in the face of contrary statistical evidence, such data ultimately proves

22   unduly speculative.

23        Thus, the court concludes that plaintiffs have not satisfied Rule 23(a)(1)'s numerosity

24   requirement.

25             b.      commonality

26        To show commonality, plaintiffs must demonstrate that there are questions of fact

27   and law that are common to the class.  See Fed.R.Civ.P. 23(a)(2).  The requirements of

28

United States District Court

For the Northern District of California

Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). However, it is insufficient to merely allege a common question in order to satisfy the commonality requirement. Rather, plaintiffs must pose a question that "will produce a common *answer* to a crucial question. See Wal–Mart, 131 S.Ct. at 2551–52 ("What matters to class certification is not the raising of common 'questions' ... but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.")(internal citation, alteration, and quotation marks omitted); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011). In other words, plaintiffs are tasked with demonstrating the existence of a common question that will connect many individual plaintiff experiences to plaintiffs' claim for class relief (e.g., here, plaintiffs' claim that defendant had a custom and practice of denying plaintiffs equal provision of police services, and of failing to train UCPD officers in monitoring, investigating, and reporting gang violence in Union City).

Plaintiffs contend that they have done so, and that the commonality element is satisfied, primarily based on "the anecdotal evidence presented by [p]laintiffs." See Sec. Mot. for Cert. at 16:18-19. Plaintiffs have submitted nearly thirty declarations[5] from named plaintiffs and putative class members, as well as testimony from purported "witnesses to the violence in Union City" which together chronicle the experiences that each person had with incidents of Latino gang violence and the UCPD's response thereto, and purportedly demonstrate the existence of the following common questions: whether the UCPD has a policy of "responding to reports of violence by the Decotos against African-Americans differently than it responds to other reports;" and whether the UCPD "acted with reckless or

---

[5] With respect to several of the named plaintiff declarations, plaintiffs request that the court take judicial notice of them on grounds that they were filed in connection with the July 21, 2010 filing of plaintiffs' original motion for class certification. However, as the underlying declarations were all filed and docketed in this very action at the time the original motion for class certification was filed, the court need not judicially notice the documents under Federal Rule of Evidence 201 but may simply refer to the documents as previously submitted evidence. Plaintiffs' request for judicial notice is accordingly DENIED as unnecessary.

15

1    deliberate indifference to the federally-protected rights of its African-American citizens."

2    See id. at 16:20-23.[6]

3          Plaintiffs also identify the existence of common "practices" that they challenge, to

4    wit: the UCPD's departure "from the Police Directive regarding the Unruh Civil Rights Act

5    without offering" guidance or training on factors to be considered or limits on the officer's

6    discretion; the UCPD's failure "to exercise oversight" or conduct "systematic review" of the

7    the UCPD's compliance with the Police Directive; the UCPD's failure to provide training to

8    SROs in the detection and investigation of gang violence in Union City schools; and the

9    UCPD's failure to provide training to patrol officers in the detection and investigation of

10   gang violence around Union City schools. Id. at 16:24-17:4.

11         Defendant challenges plaintiffs' showing on grounds that plaintiffs' 'common

12   questions' are not only the type of generic legal contentions deemed insufficient in the

13   wake of Dukes and Ellis, but also bear the hallmarks of an individualized answer,

14   dependent upon individual proof. Similarly, defendant notes that plaintiffs' 'common

15   policies' are infirm because the training and supervision failures referenced therein

16   necessarily occur subsequent to the occurrence of any triggering criminal incident, and are

17   thus untethered to any cognizable injury to members of the class. Defendant further

18   challenges plaintiffs' reliance on anecdotal evidence as insufficient, contending that

19   plaintiffs' failure to submit any data, statistics, or expert testimony establishing the fact of

20   disparate treatment distinguishes this case from the typical successful class certification.

21   Finally, defendant relies on its own evidence to disprove any suggestion that a common

22   pattern or practice of discrimination among members of the class can be inferred from

23   plaintiffs' anecdotal evidence: first, defendant's expert statistician reviewed police data for

24

_____

25         [6]    Plaintiffs, by way of supplemental submissions in connection with the
     Supplemental Declaration of Pamela Price, have also submitted additional deposition excerpts
26   from Corporal Victor Derting and Lt. Kelly Musgrove, as well as a statistical summary of calls
     for Service Schools and Parks for calendar years 2009-10. However, plaintiffs have not
27   adequately explained the significance of this evidence to Rule 23(a) factors, nor is it apparent
     from the exhibits themselves.
28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

crimes occurring between the years 2005 and 2011 and determined that the data does not support a conclusion that African-Americans were being disproportionately targeted by Hispanic suspects; second, defendant submits evidence of the UCPD's anti-discrimination policies, as well as that policy which requires police officers to exercise individual discretion when responding to crime reports.  See Declaration of Lt. Kelly Musgrove ISO Opp. Class Cert. ("Musgrove Decl."), ¶¶ 4, 12-16; id., Exs. 2-5.

The court agrees in large part with defendant's analysis.  To begin with, the common 'questions' plaintiffs proffer – whether the UCPD has a policy of "responding to reports of violence by the Decotos against African-Americans differently than it responds to other reports;" and whether the UCPD "acted with reckless or deliberate indifference to the federally-protected rights of its African-American citizens" –  are, as defendant notes, precisely the type of overarching and conclusory contentions that recent jurisprudence suggests no longer suffice to establish commonality.  See Wal-Mart Stores, 131 S. Ct. at 2551 (commonality does "not mean merely that [all plaintiffs] have all suffered a violation of the same provision of law")(commonality requires the plaintiff "to demonstrate that the class members 'have suffered the same injury'").  What plaintiffs here must posit are not questions that within them presuppose a finite legal conclusion that will apply to all class members (e.g., whether the UCPD acts to violate plaintiffs equal protection rights), but instead questions of law or fact that will generate a common answer among members of the class that will aid in determining questions of liability (e.g, allegations that all plaintiffs were subjected to the same particularized UCPD response, or conduct by the same UCPD officer, as a result of similar underlying incidents/reports).  This plaintiffs fail to do.

Even if they had appropriately framed a common question, however, the evidence would not support a finding of a common answer.  Plaintiffs' declarations collectively posit an assortment of disparate incidents of violence and threats allegedly directed at the various plaintiffs by Latino gang members and other Latinos not designated as gang members; as well as distinct responses by members of the UCPD to those incidents.  As

United States District Court

For the Northern District of California

further clarified by much of the deposition testimony[7] obtained in the case, however, many of the various incidents set forth in plaintiffs' declarations do not appear to have been reported to the UCPD, and thus no contact with the UCPD in connection with such incidents, or any failure by UCPD to provide services, was disclosed. See, e.g., Tracy W. Decl.; Tonsa W. Decl.; Declaration of D'Angelo Cole ISO Sec. Mot. Class Cert. ("Cole Decl."); Declaration of Tricia L. Hynes ISO Opp. Class Cert. ("Hynes Decl"), Ex. 6 at 20:5-19, 25:3-25; Ex. 7 at 22:7-17, 33:16-24; Ex. 8 at 29:14-16, 35:25-36:3, 40:12-41:23, 48:20-22, 50:4-12. Of the remaining incidents that were reported, the plaintiffs and putative class members have also testified to different types of violent incidents and/or threats, and different responses by the UCPD on the part of what appear to be various UCPD officers. For example, some plaintiffs testify to different degrees of interviews and investigation by UCPD and/or SROs; and at least one plaintiff testifies to investigatory acts taken by UCPD officers, which acts defendant's submission of police reports confirms eventually led to an arrest. See, e.g., Ex. 11 at 68:18-70:19; Ex. 12 at 34:8-24; see also id., Ex. 24 at 37:11-39:11, 39:23-40:18; see also, e.g., Declaration of Sgt. Michael Mahaney ISO Opp. Class Cert. ("Mahaney Decl."), Exs. 2, 5, 7. Furthermore, none of the African-American declarants whose testimony has been submitted by plaintiffs appears to aver any basis from which to compare their own experience with services provided by the UCPD, with the experiences of others belonging to other races. Nor, finally, does there appear to be any evidence by the declarants regarding the UCPD's guidance, training, and/or supervision of officers or SROs.

This evidence is simply too divergent in some respects, and too attenuated in others, to establish commonality. The anecdotal testimony does not elucidate any basis upon

---

[7] Defendant has moved to strike numerous paragraphs contained within plaintiffs' moving declarations, and furthermore seeks Rule 11 sanctions, on grounds that the declarations constitute "sham declarations" that contradict the same declarants' sworn deposition testimony. The court DENIES defendant's motion to strike and request for Rule 11 sanctions. The court has, however, taken into account both the declarations and the deposition testimony, where relevant and/or contradictory.

1  which the court might conclude that *all* plaintiffs were subject to either violence or threats

2  thereof by Latino gangs; that the plaintiffs collectively experienced incidents sufficiently

3  similar in scope such that a common response was called for by the UCPD; that the

4  plaintiffs were, in fact, subjected to a common response by the UCPD; or even that

5  plaintiffs were subjected to varying UCPD officers' use of discretion in similar ways.  Nor

6  have plaintiffs relied upon any other evidence – statistics, data, or expert testimony – that

7  would provide any alternative basis upon which the court could draw from the anecdotal

8  evidence any inference that a common question of law or fact exists – either with respect to

9  plaintiffs' claim that the UCPD has violated plaintiffs' equal protection rights by failing to

10  provide services to the same extent provided to other races and ethnicities; or plaintiffs'

11  claim that the UCPD has failed to provide appropriate guidance, training, and/or

12  supervision to UCPD officers and SROs.

13        Moreover, it is significant that defendant has affirmatively come forward with

14  evidence that disputes the conclusions that plaintiffs would have the court reach, and which

15  goes unrefuted by plaintiffs.  Defendant has submitted, for example, copies of the UCPD's

16  Canon of Ethics, Policy Manual, and Unruh Civil Rights Act Policy – all of which mandate

17  UCPD officers to provide impartial and non-discriminatory protective services; and which

18  furthermore set forth procedures for responding to and reporting incidents motivated by

19  prejudice directed against identifiable groups or individuals.  See Musgrove Decl., Exs. 2-5.

20        Union City's Police Lieutenant, Kelly Musgrove, has also submitted a declaration

21  establishing that police officers' duties involve the exercise of individual discretion when

22  responding to calls or requests for assistance from citizens.  See Musgrove Decl., ¶¶ 4-5.

23  Typically, the police handling of an incident "varies depending on several factors, including

24  whether there was physical contact, whether there was significant physical injury, the ages

25  of the parties, whether the victim can describe or identify a suspect, cooperation of

26  witnesses, and whether the victim of the incident wants to pursue the matter or not.  See id.

27  The use of discretion, as the Wal-Mart court noted in the employment context, is on its face

28

United States District Court

For the Northern District of California

1    "just the opposite of a uniform employment practice that would provide the commonality

2    needed for a class action; it is a policy *against having* uniform [] practices."  See Wal-Mart,

3    131 S. Ct. at 2554.  Here, the use of discretion by police officers similarly cuts against

4    plaintiffs' claim that a common pattern or practice of discrimination is suggested.

5         So does the testimony submitted by defendant's expert, Dr. Dominitz.  Dr. Dominitz

6    performed a statistical analysis of the UCPD's crime reports from 2005 through 2011.  See

7    generally Dominitz Decl.  Dr. Dominitz divided the crimes reported into two categories: one

8    reporting homicide or attempted homicide (which Dr. Dominitz labeled Category A); and

9    one reporting assaults, batteries and brandishing a weapon (which he labeled Category B).

10   See id., ¶ 12.  For Category B crimes – e.g., the types of criminal incidents that make up

11   the majority of the plaintiffs' reported incidents here – Dr. Dominitz concluded that out of a

12   total universe of 903 reported crimes, when the suspect was known to be Hispanic, African-

13   Americans were victims only 16% of the time and other Hispanics were victims 62% of the

14   time.  See id., ¶¶ 13-14, 20.  In contrast, when the suspect(s) are reported to be African-

15   American, the victim is more likely to be African-American than Hispanic, as 52% are

16   African-American and 14% are Hispanic.  Id., ¶ 20.  Generally speaking, Dr. Dominitz'

17   testimony tends to suggest that the African-American plaintiff class was not experiencing,

18   as a whole, a disproportionate amount of violence at the hands of Hispanics.  Even less

19   likely, based on Dr. Dominitz' testimony, is the inference that the African-American plaintiff

20   class was experiencing a disproportionate amount of violence at the hands of a 'Latino

21   gang' – as plaintiffs' class definition requires.

22        In short, and for all the foregoing reasons, the court concludes that the anecdotal

23   evidence submitted by plaintiffs fails to raise the suggestion that there is a common pattern

24   or practice among the UCPD that affects the class as a whole.  While not all plaintiffs need

25   share the same factual predicates in every respect, there must be *some* common question

26   of law or fact that ties plaintiffs' claims together – which the court is unable to decipher

27   here.  See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 (9th Cir. 2011)(court

28

20

United States District Court

For the Northern District of California

1   required to resolve any factual disputes necessary to determine whether there was a

2   common pattern and practice that could affect the class as a whole; "if there is no evidence

3   that the entire class was subject to the same allegedly discriminatory practice, there is no

4   question common to the class").

5       Accordingly, the court concludes that plaintiffs' have also failed to satisfy the

6   commonality element, as required pursuant to Rule 23(a)(2), and class certification must be

7   denied on this basis, as well.

8                                              * * *

9       In view of the court's findings that plaintiffs have failed to establish either numerosity

10  or commonality, the court need not reach the remaining factors under Rule 23(a) (and

11  indeed, could equally presume that plaintiffs had satisfied them without reaching a contrary

12  result as to certification under Rule 23(a)).  Nor need the court reach the parties' arguments

13  in connection with plaintiffs' Rule 23(b) showing.  As defendant has also objected to

14  certification on Rule 23(b) grounds, however, the court will nonetheless proceed to briefly

15  consider plaintiffs' reliance on Rule 23(b)(2) and Rule 23(b)(3).

16      2.    Rule 23(b)(2)

17      Rule 23(b)(2) permits class actions for declaratory or injunctive relief if "the party

18  opposing the class has acted or refused to act on grounds that apply generally to the class,

19  so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

20  class as a whole...."  Class certification under Rule 23(b)(2) is appropriate "only where the

21  primary relief sought is declaratory or injunctive."  See Zinser v. Accufix Research Institute,

22  Inc., 253 F.3d 1180, 1195 (9th Cir. 2001); Ellis v. Costco Wholesale Corp., 657 F.3d 970,

23  986 (9th Cir. 2011).  Here, plaintiffs contend that the "predominant issue" in the case is

24  whether injunctive relief should be granted, and depends upon establishing that "there has

25  been a policy by UCPD not to take effective action to control the Latino gang violence

26  against African-Americans, and that, therefore, equal protection has been denied..."  See

27  Sec. Mot. Class Cert. at 18:15-20.

28

21

United States District Court

For the Northern District of California

1    Injunctive relief may very well be important to plaintiffs.  However, their complaint

2    also seeks "damages for mental and emotional distress, in an amount in excess of

3    $5,000,000.00 to be determined at the time of trial...".  See FAC, Prayer for Relief.  This

4    request for damages represents a substantial sum, and would furthermore require an

5    individualized award of damages among plaintiffs, according to proof of mental and

6    emotional distress.  Plaintiffs, in response to these points, fail to offer any meaningful

7    rebuttal.  Thus, the court finds that the monetary relief sought by plaintiffs is not "incidental"

8    to the injunctive relief sought – a finding that precludes certification of a plaintiff class

9    pursuant to Rule 23(b)(2).  Wal-Mart, 131 S. Ct. at 2557 (Rule 23(b)(2) "does not authorize

10   class certification when each class member would be entitled to an individualized award of

11   monetary damages")("We now hold that [claims for monetary relief] may not [be certified

12   under Rule 23(b)(2) ], at least where (as here) the monetary relief is not incidental to the

13   injunctive or declaratory relief."); see also Sepulveda v. Wal-Mart Stores, Inc., 2011 WL

14   6882918 (9th Cir. Dec. 30, 2011).

15       3.    Rule 23(b)(3)

16   Finally, plaintiffs seek certification of a class seeking monetary relief pursuant to

17   Rule 23(b)(3), which requires plaintiffs to establish that common questions of law or fact

18   predominate over individual issues, and that a class action is superior to other methods

19   available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b)(3).  "[T]he

20   main concern in the predominance inquiry ... [is] the balance between individual and

21   common issues."  See In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953.

22   959 (9th Cir. 2009).  The Ninth Circuit recently reiterated that, insofar as Rule 23(b)(3) is

23   concerned, "there is clear justification for handling the dispute on a representative rather

24   than an individual basis" if "common questions present a significant aspect of the case and

25   they can be resolved for all members of the class in a single adjudication...."  Mazza v. Am.

26   Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012); see also Hanlon v. Chrysler

27   Corp., 150 F.3d 1011, 1022 (9th Cir.1998).

28

22

United States District Court

For the Northern District of California

1    Plaintiffs contend, very simply, that certification of a (b)(3) class is appropriate here,

2  because "the claims of every class member will depend on a finding of a denial of equal

3  protection based on race," and furthermore, because class treatment would promote

4  "efficiency and the preservation of judicial resources."  See Sec. Class Cert. Mot. at 19:19-

5  20:3.

6    As defendant notes, however, plaintiffs cannot establish that defendant had a

7  pattern and practice of intentionally failing to provide police services to plaintiffs on an equal

8  basis, without an individualized inquiry.  As has already been noted, the anecdotal

9  evidence plaintiffs rely upon for proof that certification is warranted, highlight: a wide variety

10  of distinct incidents of violence and threats at the hands of both Latinos and purported

11  'Latino gang' members – many of which were never reported to the UCPD in the first place;

12  differing responses by members of the UCPD and/or SROs to the incidents that were

13  reported; and different results achieved by the UCPD in response to the underlying

14  incidents.  In addition, plaintiffs have failed to rebut defendant's evidence that UCPD

15  officers, as part of their duties, routinely exercise discretion in responding to incident

16  reports.  Nor have plaintiffs submitted any evidence establishing the provision of police

17  services provided to members of other races; or any basis for evaluating and/or comparing

18  any such provision of services to plaintiffs' experience.  These facts suggest that only an

19  individualized inquiry would answer the question whether defendant had violated plaintiffs'

20  equal protection rights by intentionally failing to provide police services to plaintiffs on an

21  equal basis as that provided to other races.

22    In view of the foregoing deficiency, plaintiffs have also not established the

23  'superiority' of class action treatment in this instance, as the individualized issues raised by

24  the evidence would hardly streamline the issues to be litigated before the court.  See Fed.

25  R. Civ. Proc. 23(b)(3) (requiring that a "class action [be] superior to other available methods

26  for fairly and efficiently adjudicating the controversy").

27    Accordingly, and in addition the foregoing findings, the court must DENY plaintiffs'

28

23

1  request for certification of a class pursuant to Rule 23(b)(3).

2  C.      Conclusion

3        For all the foregoing reasons, plaintiffs' motion for class certification is DENIED.

4  Additionally, defendant's evidentiary objections to several of the declarations submitted in

5  support of plaintiffs' motion, as well as to the evidence submitted in support of the

6  supplemental declaration of Pamela Price (e.g., Exs. G-J), are OVERRULED.

7        A case management conference will be held on June 7, 2012 at 2:00 p.m. to discuss

8  the scheduling of future proceedings. The parties shall file a joint case management

9  statement 7 days in advance of the conference. This date will be vacated if an appeal is

10  taken pursuant to Rule 23(f).

11

12  DATED: May 8, 2012

13                          _____

14                     PHYLLIS J. HAMILTON
                         United States District Judge

**United States District Court**
For the Northern District of California

24