UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STERLING SKINNER,

    Plaintiff,

    v.

CITY OF UNION CITY,

    Defendant.

_____/

No. C 09-2723 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on September 25, 2013. Defendant City of Union City ("defendant" or "Union City") appeared through its counsel, Rachel Wagner. Plaintiff's counsel did not appear at the hearing. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion for summary judgment as follows.

This case was originally filed on June 19, 2009, and because plaintiff Sterling Skinner ("plaintiff") was a minor at the time, the complaint was filed by plaintiff's guardian ad litem, Alvett Fobbs.

The critical incident underlying this suit occurred on December 21, 2007. On that date, Vernon Eddins (a friend of plaintiff's) was shot and killed while at school. Plaintiff was present at the shooting, and "barely escaped death and/or serious injury." Sixth Amended Complaint ("6AC"), Dkt. 301 at ¶ 9. Plaintiff alleges that Eddins' murder was "part of a course of conduct by Latino gangs intended to terrorize African-American youths." Id., ¶ 10. Plaintiff also claims that the Union City Police Department ("UCPD") has a "policy and custom of denying police services to African-Americans who have been victimized by the Decotos" [a Latino gang based in Union City]. Id., ¶ 8.

Plaintiff alleges that, prior to the December 21, 2007 incident, UCPD was aware of on-going, racially motivated threats of violence – including shootings – that were directed against plaintiff and other African-American youths. In his original complaint, plaintiff alleged that UCPD's failure to protect him and other African-American students was a violation of the due process clause of the Fourteenth Amendment. However, the court dismissed that cause of action nearly three years ago, based on well-established authority that an alleged police failure to protect an individual against third-party violence cannot violate the Fourteenth Amendment. See Dkt. 184 at 7 (citing DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 195 (1989)). After that dismissal, plaintiff premised any alleged constitutional claim on a violation of the equal protection clause, alleging that UCPD treats African-Americans differently from non-African-Americans who are similarly situated.

Specifically, plaintiff claims that UCPD "regularly provides non-discriminatory police services to residents of other ethnicities, other than African-Americans." Dkt. 301, ¶ 25. These services include "dispatching officers and responding promptly to reports of harassment involving violence, preparing detailed reports of incidents of violence . . . allowing citizens to file and/or obtain reports regarding violence by the Decotos, providing detailed information to other police agencies to assist in the detection and prevention of gang violence, arresting perpetrators of gang and/or racially-motivated violence, providing detailed information to the local district attorney to assist in the prosecution of crimes committed by the Decotos, enforcing the penal laws against the Decoto gang, and tracking incidents of gang violence in the community and local schools." Id.

Plaintiff alleges that the "racial harassment by the Decotos was successful in achieving its unlawful purpose – to force black families and their children to leave Union City." Dkt. 301, ¶ 24. Plaintiff alleges that "numerous African-American families have moved out and away from Union City and/or enrolled their children in schools outside of the New Haven Unified School District as a direct result of the ongoing attacks, threats, and acts of intimidation against African-Americans in Union City and the denial of police

2

services by UCPD." Id.  Plaintiff alleges that he himself has been enrolled in a school outside of his residential area, "in order to remove him from any contact with any persons who might threaten him or assault him on the basis of his race." Id., ¶ 26.

This case has had an extensive procedural history, which provides background for the current motion.  The case was originally filed on June 19, 2009, by plaintiff's guardian ad litem, and asserted seven causes of action – one against Union City (for violation of section 1983, for failing to protect plaintiff from violence and threats of violence), and six against the New Haven Unified School District ("NHUSD") (for violation of section 1983, violation of California's Constitution, violation of the Unruh Act, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress).  See Dkt. 1.  On October 7, 2009, plaintiff (joined by a second plaintiff, Jalen L.) filed a first amended complaint against NHUSD and Union City, asserting the same seven causes of action.  See Dkt. 11.  Union City then filed a motion to dismiss and NHUSD filed a motion for judgment on the pleadings, and in response, plaintiffs filed a motion for leave to file a second amended complaint.  The court granted plaintiffs' motion, and the second amended complaint was filed on January 27, 2010.  See Dkt. 58.

The second amended complaint was filed as a putative class action, and named ten plaintiffs and five defendants (Union City and four individual defendants – NHUSD was dropped from the case).  The second amended complaint asserted two causes of action, both under section 1983, and was filed on behalf of "all past and present African-American students of the New Haven Unified School District during the period from November 2006 to the present, and future African-American students, who have been, or will be subjected to racial harassment within Union City." Id., ¶ 18.  On July 21, 2010, plaintiffs filed a motion for class certification, along with 29 supporting declarations.  See Dkts. 129-158.  The next day, plaintiffs filed an amended motion for class certification.  See Dkt. 155.  However, four days later, plaintiffs filed a motion to enlarge the briefing and hearing schedule on their class certification motion, based on their intention to seek leave to file a third amended complaint.  See Dkt. 162.  The court vacated the class certification motion, and went

3

forward on plaintiffs' motion for leave to file a third amended complaint. The proposed third amended complaint sought to add two new named plaintiffs, and to include the following classes and subclasses:

> All African-American youths between the ages of 13 and 24 who have been subjected to violence or threats of violence by Latino gangs in Union City during the period from January 2004 to the present and who may be subjected to violence or threats of violence by Latino gangs in the future, including:
>
>> African-American youths between the ages of 13 and 24 who resided in Union City during the period from January 2004 to the present and were subjected to violence or threats of violence by Latino gangs.
>>
>> African-American youths between the ages of 13 and 24 who attended schools in Union City during the period from January 2004 to the present and were subjected to violence or threats of violence by Latino gangs.
>>
>> African-American youths between the ages of 13 and 24 who came into Union City during the period from January 2004 to the present and were subjected to violence or threats of violence by Latino gangs.
>>
>> African-American youths between the ages of 13 and 24 who previously resided in and moved out of Union City during the period from January 2004 to the present and because of violence or threats of violence by Latino gangs.
>>
>> African-American youths between the ages of 13 and 24 who will be attending schools in Union City in the future and may be subjected to violence or threats of violence by Latino gangs.

See Dkt. 163. The court granted plaintiffs' motion, and the third amended complaint was filed on September 1, 2010. See Dkt. 169.

The third amended complaint asserted just one cause of action (under section 1983) against just one defendant, the city of Union City. Union City moved to dismiss the third amended complaint for failure to state a claim. The court granted defendant's motion on January 31, 2011, and specifically held that plaintiffs had "fail[ed] to allege that plaintiffs were treated differently from any other class of individuals that were similarly situated, or to explain how defendant acted with discriminatory intent – fundamental prerequisites to any equal protection claim." Dkt. 184 at 8. The court further held that, "to the extent plaintiffs attempt to root their equal protection violation in a municipal custom or policy, it is difficult to discern from the complaint, as stated, what the actual nature of those customs and/or policies are." Id. at 9. However, the court granted plaintiffs an opportunity to amend the

complaint, and on February 28, 2011, plaintiffs filed a fourth amended complaint.  See Dkt. 186.  The parties then stipulated to allow plaintiffs to file a "revised fourth amended complaint," which was filed on March 22, 2011, and again asserted one cause of action (under section 1983) against Union City.  See Dkt. 189.  Union City moved to dismiss the revised fourth amended complaint for failure to state a claim, and the court granted the motion, again noting that "plaintiffs must provide factual allegations that identify the police services that were allegedly denied, identify a similarly situated group that was not denied the same services as a basis for comparison, and identify the police services that were allegedly provided to that similarly situated group but denied to plaintiffs."  Dkt. 207 at 3.  The court also (again) noted that "plaintiffs must also allege facts to show that the alleged policy or custom is the moving force behind the constitutional violation."  Id.  The court again granted plaintiffs an opportunity to amend, and on August 19, 2011, plaintiffs filed a fifth amended complaint, which asserted one cause of action (under section 1983) against Union City.  See Dkt. 208.

Plaintiffs then filed a motion for class certification (their second such motion), along with 21 supporting declarations.  See Dkts. 215-236.  On the day that plaintiffs' reply was due, they instead filed a motion to extend the time to file their reply.  See Dkt. 254.  The court noted that "plaintiffs ha[d] not established good cause for an extension of the deadline," but granted a brief extension, to allow plaintiffs some additional time while still preserving the scheduled hearing date.  Dkt. 257.  The court held a hearing on plaintiffs' motion for class certification, and on May 8, 2012, it issued an order denying class certification.  The court held that "plaintiffs' class definition is so broad and vague as to make the class unascertainable," and further found that plaintiffs had "fail[ed] to raise the suggestion that there is a common pattern or practice among the UCPD that affects the class as a whole," and that plaintiffs had not "submitted any evidence establishing the provision of police services provided to members of other races; or any basis for evaluating and/or comparing any such provision of services to plaintiffs' experience."  See Dkt. 268.

The court then held a case management conference on August 30, 2012, to discuss

the scheduling of future proceedings.  At that time, the court set a pretrial schedule, including a discovery cutoff date, a deadline for motions to be heard (September 25, 2013), and a trial date.  After that case management conference, all but one of the named plaintiffs dismissed their claims, leaving only the current plaintiff, Sterling Skinner.  Plaintiff Skinner then filed a motion for leave to file a sixth amended complaint, seeking to add two new causes of action (under section 1982 and under the Fair Housing Act) against Union City, and to add three new individual Union City police officers as defendants.  The court granted the motion to allow the new claims against Union city, but denied the motion to add new defendants, finding that "the addition of three new defendants, more than three years after the original complaint was filed, and after it has been amended five times already, would be unduly prejudicial to those defendants, particularly given the absence of good cause for their omission up to this point."  Dkt. 299 at 2.

In accordance with the court's order, plaintiff filed the operative sixth amended complaint ("6AC") on January 30, 2013.  The 6AC asserts three causes of action against Union City: (1) intentional discrimination and failure to train under section 1983; (2) interference with the right to lease and reside in real property under section 1982; and (3) interference with the right to lease and reside in real property under the Fair Housing Act.  Defendant moved for summary judgment on August 21, 2013, and noticed the hearing for September 25, 2013 (the date set forth in the court's August 30, 2012 case management order as the last day for hearing on dispositive motions).  Two business days before plaintiff's opposition brief was due, plaintiff filed a motion for extension of time, seeking a two-week extension to file his opposition brief.  The court noted that plaintiff's requested extension would necessitate moving the motion's hearing date, which would in turn necessitate moving the trial date (both of which had been in place for over one year).  To avoid moving those dates, the court granted a brief extension, giving the plaintiff until September 6 to oppose defendant's motion.  However, plaintiff chose not to file a substantive opposition, and instead re-argued his motion for an extension of time, noting that "he is currently incarcerated and unable to meet with his counsel," and that the court

6

has power to "defer considering the motion or even deny it when the opposing party cannot present facts essential to justify his opposition and submits a declaration stating such reasons."  Dkt. 308 at 2-3.  However, plaintiff acknowledged that he "must make clear what specific information is sought and how it would preclude summary judgment."  Id. at 3.  Plaintiff's counsel submitted a declaration stating only that, if she were able to meet with plaintiff, his declaration would have "facts that relate to the several instances of police contacts that make up the discriminatory conduct of the UCPD."  Dkt. 308-1 at 2.

**DISCUSSION**

A.   Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co.,

1  Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000); see also Celotex, 477 U.S.
2  at 324-25 (moving party can prevail merely by pointing out to the district court that there is
3  an absence of evidence to support the nonmoving party's case).
4       When the moving party has carried its burden, the nonmoving party must respond
5  with specific facts, supported by admissible evidence, showing a genuine issue for trial.
6  Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence of
7  only "some alleged factual dispute between the parties will not defeat an otherwise properly
8  supported motion for summary judgment."  Anderson, 477 U.S. at 247-48.
9       When deciding a summary judgment motion, a court must view the evidence in the
10 light most favorable to the nonmoving party and draw all justifiable inferences in its favor.
11 Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).
12 B.    Legal Analysis
13      As an initial matter, plaintiff does not attempt to meet his burden in opposing
14 summary judgment, and instead relies on his requested extension (which the court
15 construes as a Rule 56(d) request) as the only basis for deferring or denying summary
16 judgment.  However, Rule 56(d) requires the nonmovant to show "by affidavit or declaration
17 that, for specified reasons, it cannot present facts essential to justify its opposition."  The
18 Ninth Circuit has held that the "party seeking a continuance bears the burden to show what
19 specific facts it hopes to discover that will raise an issue of material fact," and that "[t]he
20 mere hope that further evidence may develop prior to trial is an insufficient basis for a
21 continuance."  Contl. Martine of S.F., Inc. v. Pac. Coast Metal Trades Dist. Council, Metal
22 Trades Dept., AFL-CIO, 817 F.2d 1391, 1395 (9th Cir. 1987).  In a later case, the Ninth
23 Circuit reiterated that the party seeking additional discovery must "proffer sufficient facts to
24 show that the evidence sought exists."  Nidds v. Schindler Elevator Corp., 113 F.3d 912,
25 921 (9th Cir. 1996).  Plaintiff's counsel's declaration, which states only that the additional
26 discovery would yield "facts that relate to the several instances of police contacts that make
27 up the discriminatory conduct of the UCPD," falls woefully short of that standard.  It
28 appears that the only discovery sought is a declaration from plaintiff himself, but there has

8

been no showing of what a supplemental declaration would add to the declaration and deposition testimony from plaintiff that is already in the record. Moreover, plaintiff's requested extension appears to be indefinite, as neither his opposition nor his counsel's declaration provides any indication as to when the additional discovery could be obtained. The opposition states that plaintiff is currently incarcerated, but does not state when plaintiff's incarceration began, when it is due to end, or how long it would take for plaintiff's counsel to obtain a meeting with him. The court intended on asking some of these questions of plaintiff's counsel at the hearing on defendant's motion, but plaintiff's counsel was not present at the noticed 9:00am start time, nor did she arrive before the court adjourned at 10:20am. The court is flummoxed by plaintiff's counsel's failure to even try to meet the requirements of Rule 56(d) in the opposition brief, and is equally flummoxed by counsel's failure to attend the hearing, given that the date and time were clearly known by counsel as evidenced by her motion papers and prior request for a continuance. In the absence of any showing by plaintiff, the court has no choice but to DENY plaintiff's request for additional discovery, and will address defendant's motion on the basis of the arguments presented in the papers.

Plaintiff's first cause of action is a section 1983 claim, and requires plaintiff to provide evidence showing (1) a constitutional right of which he was deprived, (2) a policy of the municipality, (3) that the policy rose to the level of "deliberate indifference" to the constitutional right, and (4) that the policy was the "moving force behind the constitutional violation." Oviatt v. Pierce, 954 F.2d 1470, 1474 (9th Cir. 1992). Plaintiff splits this cause of action into two prongs, the first of which is characterized as an "intentional discrimination" claim, and is based on defendant's alleged deprivation of plaintiff's right to equal protection. To support an equal protection claim, plaintiff must show that defendant acted with a purposeful intent to discriminate against him based on his race, and that he was treated differently from persons similarly situated. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

As stated above, plaintiff alleges that Union City discriminated against him by

depriving him the services of "dispatching officers and responding promptly to reports of harassment involving violence, preparing detailed reports of incidents of violence . . . allowing citizens to file and/or obtain reports regarding violence by the Decotos, providing detailed information to other police agencies to assist in the detection and prevention of gang violence, arresting perpetrators of gang and/or racially-motivated violence, providing detailed information to the local district attorney to assist in the prosecution of crimes committed by the Decotos, enforcing the penal laws against the Decoto gang, and tracking incidents of gang violence in the community and local schools." Dkt. 301, ¶ 25.  Although plaintiff did not submit any evidence in opposition to the present motion, his previous declaration (submitted in support of class certification) identifies five incidents of violence or threats of violence by the Decotos.  One such incident was the murder of Vernon Eddins, which resulted in six arrests.  See Dkt. 304, Ex. A (Mahaney decl.), at Ex. 4.  Two of the incidents were never reported to UCPD, and thus cannot form the basis of a constitutional deprivation.  See Dkt. 304, Ex. B (Wagner decl.), at Ex. 1, 74:3-10, 77:7-19.  Thus, that leaves two incidents from plaintiff's declaration.  The first occurred in October 2007, and the second occurred in July 2009.  See Dkt. 304, Ex. A (Mahaney decl.), Ex. 2B (October 2007 incident), Ex. 2E (July 2009 incident).  On both occasions, UCPD responded to the scene, interviewed witnesses, and made a police report.  Id.  Thus, defendant's evidence directly contradicts the allegations of the complaint, and show that the police did indeed dispatch officers and prepare detailed reports.  And plaintiff has not presented any evidence in response that would create a triable issue of material fact that each reported incident resulted in a police response and a detailed police report.

Defendant has also presented evidence of three additional incidents where plaintiff was the victim of a crime, in March 2007, October 2007, and September 2008.  See Dkt. 304, Ex. A (Mahaney decl.), Ex. 2A (March 2007), Ex. 2C (October 2007), Ex. 2D (September 2008).  It appears that none of these incidents was mentioned in plaintiff's declaration, nor in the declaration of his guardian ad litem.  Regardless, defendant has presented evidence that each incident resulted in a prompt police response, an

10

investigation, and a police report Id. Morever, the March 2007 and October 2007 incidents resulted in arrests. Id. Again, this evidence contradicts the allegations of the complaint, and plaintiff has not submitted any evidence that would create a triable issue of material fact that each reported incident resulted in at least a police response and a detailed police report, and in two instances, in arrests.

       In sum, defendant has presented evidence that plaintiff was not actually deprived of any services, and thus was not discriminated against (let alone intentionally discriminated against). Plaintiff has not presented any evidence in response that would create a triable issue of material fact as to that allegation, and even if he had, plaintiff would still need to present evidence that he was treated differently than persons similarly situated. In fact, plaintiff has been on notice of the need to provide evidence that "he was treated differently from persons similarly situated" since at least as early as January 2011, when the court dismissed the third amended complaint and held that there was no "separately identifiable group of individuals that was similarly situated," nor any "basis for comparison" between plaintiffs and any other group. Dkt. 184 at 9. The court again called attention to this deficiency in dismissing the fourth amended complaint (holding that plaintiffs needed to "identify a similarly situated group that was not denied the same services as a basis for comparison"), and in denying class certification (finding that plaintiffs had failed to submit "any evidence establishing the provision of police services provided to members of other races; or any basis for evaluating and/or comparing any such provision of services to plaintiffs' experience."). Dkt. 207 at 3; Dkt. 268 at 23. Thus, plaintiff has been given multiple warnings (spanning over two years) of the need to present evidence on this topic, and has taken 50 "persons most knowledgeable" depositions on 18 categories of police practice and procedure, yet still presents no evidence regarding Union City's treatment of similarly situated persons. Thus, after voluminous discovery, plaintiff has not presented any evidence of an essential element of his discrimination claim to carry his ultimate burden of persuasion at trial.

       Nor does plaintiff's counsel's declaration "make clear" how additional time would

11

enable plaintiff to provide such evidence. Discovery has closed, and while plaintiff may be able to provide testimony regarding his own experience, his testimony is irrelevant to the issue of defendant's treatment of similarly situated persons. In short, plaintiff's incarceration does not prevent him from presenting evidence regarding similarly situated persons, and his failure to do so in opposing this motion is fatal to his § 1983 claim. See, e.g., Tatum v. City and County of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) (denial of continuance was proper where plaintiff "did not identify the specific facts that further discovery would have revealed or explain why those facts would have precluded summary judgment."); Keebler Co. v. Murray Bakery Products, 866 F.2d. 1386, 1389 (Fed. Cir. 1989) ("If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files.).

Morever, in order to assert a section 1983 claim against a municipality, plaintiff must present evidence of a policy or custom on the part of the city. See Monell v. New York Dept. Of Social Services, 436 U.S. 658, 690 (1997). Despite the extensive discovery that has been conducted in this case, plaintiff still has not presented any evidence of such a policy or custom. And in fact, defendant has presented evidence that Union City has an express non-discrimination policy. Dkt. 304, Ex. C (Musgrove decl.), Ex. 2-4. In short, plaintiff has not presented any evidence of an essential element of his claim in order to carry his ultimate burden of persuasion at trial, nor does his incarceration affect his ability to present such evidence.

The second prong of plaintiff's 1983 claim asserts a "failure to train" claim against Union City. But, as discussed above, defendant has presented evidence that plaintiff's reports to the police were handled properly, and plaintiff has presented no evidence contradicting that showing and creating a triable issue of material fact. Moreover, a "failure to train" claim against a municipality requires evidence of a policy or custom, which plaintiff has not presented, or even identified. Thus, again, plaintiff does not have any evidence of

12

an essential element of his claim in order to carry his ultimate burden of persuasion at trial with regard to either prong of his section 1983 claim, and thus defendant's motion for summary judgment of plaintiff's first cause of action is GRANTED.

Plaintiff's second cause of action is brought under section 1982, and requires plaintiff to show that (1) he is a member of a racial minority, (2) he applied for and was qualified to rent or purchase certain property or housing, (3) he was rejected because of his race, and (4) the opportunity to purchase or rent remained open. See, e.g., Sobayo v. Drew Health Found. Inc., 2011 U.S. Dist. LEXIS 106788 (N.D. Cal. 2011). In addition, plaintiff must show that any constitutional violation was caused by an official policy or custom. Monell v. New York Dept. Of Social Services, 436 U.S. 658, 690 (1997). As an initial matter, plaintiff's complaint indicates that this claim is based on the allegations that "defendant UCPD refused to provide police services to African-American students attending schools within Union City because of their race," and that such refusal "interfered with [plaintiff's] right to lease and reside in real property in Union City." Dkt. 301, ¶ 44. As discussed in the context of plaintiff's section 1983 claim, defendant has presented evidence that plaintiff was not actually denied police services, and plaintiff has not presented testimony that would create a triable issue of material fact as to that claim. Thus, plaintiff has failed to establish even a predicate for his section 1982 claim. Moreover, plaintiff has not identified any such "policy or custom" that gives rise to the alleged violation, and indeed, it appears that plaintiff has not taken any discovery since this cause of action was added to the complaint in January 2013. See Dkt. 309 at 7 (noting that plaintiff has not taken any discovery since August 2012). And as discussed above, the only evidence in the record as to UCPD's discrimination-related policy shows that UCPD has express anti-discrimination policies. Thus, plaintiff has presented no evidence of an essential element of his claim in order to carry his ultimate burden of persuasion at trial with regard to his section 1982 claim, and thus defendant's motion for summary judgment of plaintiff's second cause of action is GRANTED.

Finally, plaintiff's third cause of action is brought under the Fair Housing Act ("FHA"),

which makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604.  The complaint itself contains only a conclusory statement that "UCPD refused to provide police services to Mr. Skinner because of his race," which interfered with his "right to lease and reside in real property in Union City."  Dkt. 301, ¶ 46.  And as discussed above, defendant has presented evidence that plaintiff was not actually denied police services, and plaintiff has not presented testimony that would create a triable issue of material fact as to that claim.  Thus, plaintiff has failed to establish even a predicate for his FHA claim. Moreover, plaintiff has not made any showing that he was discriminated against in connection with the sale or rental of a dwelling, or in the provision of services or facilities, and again, the court notes that plaintiff has not taken any discovery since this claim was added to the case. Thus, plaintiff has presented no evidence of an essential element of his claim needed to carry his ultimate burden of persuasion at trial with regard to his FHA claim, and thus defendant's motion for summary judgment of plaintiff's third cause of action is GRANTED.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: September 27, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

14